Victoria **BUTTO** and Lakesha Houser, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**COLLECTO INC.,** d/b/a EOS/CCA, Defendant.

No. 10–cv–2906 (ADS)(AKT).

United States District Court, E.D. New York.

March 29, 2013.

Lemberg & Associates, LLC By: Sergei Lemberg, Esq., Stephen F. Taylor, Esq., of Counsel, Stamford, CT, for the Plaintiffs.

Zeldes, Needle & Cooper, P.C. By: Jonathan D. Elliot, Esq., of Counsel, Bridgeport, CT, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is a putative class action brought against the Defendant Collecto Inc., d/b/a

EOS/CCA ("Collecto") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Presently before the Court is a motion by the Plaintiff Victoria Butto, on behalf of herself and all other similarly situated, for an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23. In addition, the Plaintiff seeks an order appointing Victoria Butto as class representative and Lemberg and Associates, LLC, as class counsel. For the reasons set forth below, the Court adopts the Report and Recommendation issued by United States Magistrate Judge A. Kathleen Tomlinson, which recommended that the motion for class certification be granted in part and denied in part.

## I. BACKGROUND

In 2007 and 2009, Victoria Butto (the "Plaintiff") entered into a cell phone service contract with Verizon Wireless ("Verizon"). Butto then failed to pay her cell phone bills, and in response, Verizon cancelled her service. After the service termination, Butto's account remained unpaid, and, pursuant to a standing collection agreement that Verizon had with the Defendant Collecto, Verizon requested Collecto to attempt to collect the overdue charges. Collecto complied, and in February 2010, Butto received a "Notice of Collection Placement" in the mail from the Defendant Collecto. The letter demanded payment of both a "principal" amount of $181.94, and "Fees/Coll[ection] Costs" in the amount of $33.29.

In response to this letter, Butto and another plaintiff, Lakesha Houser, commenced the present putative class action against Collecto on June 23, 2010. Butto and Houser do not contest the principal amounts that Collecto seeks to recover, but rather assert that Collecto's demand for collection costs was improper. The Plaintiffs maintain that, at the time Collecto mailed its Notices of Collection Placement, Collecto had no valid basis for seeking to recover collection costs from the plaintiffs

On October 6, 2012, the Court referred this matter to United States Magistrate Judge A. Kathleen Tomlinson for a recommendation as to whether (1) this case should be certified as a class action pursuant to Fed.R.Civ.P. 23; (2) the Plaintiff Victoria Butto should be appointed as class representative; and (3) whether Lemberg & Associates, LLC should be appointed as class counsel. On February 16, 2013, Judge Tomlinson issued a thorough Report and Recommendation ("the Report"), recommending that the Plaintiff's motion for class certification be granted in part and denied in part.

First, Judge Tomlinson reviewed the two classes of consumers put forth by the Plaintiff, including the revised definition for Class B, which was proposed to include "[a]ll consumers in the State of New York from whom Defendant collected 'collection fees' on behalf of Verizon on Verizon Wireless accounts." (Pl.'s Reply at 4.) Judge Tomlinson found that because Plaintiff Butto never paid a collection fee, she could not be a member of Class B and as such, recommended that the Plaintiff's motion for class certification as to proposed Class B should be denied.

Next, Judge Tomlinson analyzed the Rule 23 requirements in connection with the Plaintiff's amended definition of Class A, namely: numerosity; commonality; typicality; and adequacy of representation.

With regard to numerosity, Judge Tomlinson reasoned that based upon the 18,949 collection letters sent to Verizon customers, common sense would dictate that a least some percentage of these were sent to Verizon Wireless customers as opposed to Verizon Business and Telecom customers. The latter customers could not recover under the FDCPA. She also found that despite the Defendant's argument that customers may have received collection letters with varying language, the Plaintiff's amendment to the Class A definition to include the language "[a]ll customers in the State of New York who were sent a collection letter by Defendant *substantially similar to the Letter sent to Plaintiff for a Verizon Wireless account* [,]" sufficiently alleviated that concern. For these reasons, Judge Tomlinson concluded that the Plaintiff established the first criterion of numerosity.

With regard to commonality and typicality, the Report rejected the argument by the Defendant that the need to separate consumer debts from commercial debts precluded certification. Further, although the Defendant argued that commonality and typicality were not met because individualized inquires needed to be made into the particular agreements each potential class member had with Verizon, Judge Tomlinson found that based upon the sample customer agreements from 2006 through 2010 submitted by the Plaintiff, these agreements have largely identical language pertaining to collection fees.

In addition, the Defendant contended that class certification was not appropriate because there are particular defenses unique to Butto which preclude class certification, namely that the Plaintiff did not first seek relief under the FDCPA debt dispute procedure before filing an action with this Court. Nevertheless, Judge Tomlinson found that because the Plaintiff was not attacking the accuracy of the bill standing alone, it would be unnecessary for her to engage in the debt dispute procedure as a prerequisite to filing a federal action. Thus, the Report ultimately concluded that the class members' claims are typical of one another.

With regard to the adequacy of representation, Judge Tomlinson found that she could not identify any antagonism between the Plaintiff's claims and those of the proposed Class A, which would interfere with the Plaintiff's ability to act as class representative. Judge Tomlinson also explored whether Lemberg & Associates, LLC should be appointed lead counsel and concluded that the firm would adequately represent the class.

Finally, in engaging in the relevant Rule 23(b) analysis, Judge Tomlinson determined that questions of law or fact predominated over the individual issues presented, and that a class action was superior to other methods for adjudicating this controversy. In this regard, she rejected the Defendant's repeated arguments that individual questions concerning the nature of the debt as personal or business, as well as other individualized issues, would preclude a finding that a class action here is a superior method for the "fair and efficient adjudication" of a suit potentially involving over 18,000 individuals with identical or nearly identical claims.

Therefore, in sum, Judge Tomlinson recommended that the Plaintiff's motion for class certification be denied with respect to Class B, but granted with respect to Class A, as reflected in the following amended definition:

All consumers in the State of New York who were sent a collection letter by Defendant substantially similar to the Letter sent to Plaintiff for a Verizon Wireless account within one year prior to the filing of this action, and which was not returned as undeliverable, which letter included a collection fee for Verizon Wireless service which had not yet been incurred at the time the letter was sent.

## II. DISCUSSION

### A. *Standard of Review*

■■■ A court is required to make a de novo determination as to those portions of the Report and Recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(C); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989). The phrase "de novo determination" in Section 636(b)(1)—as opposed to "de novo hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Section 636 does not require a court "to rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'" *Id.* at 674, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424. Rather, in making such a determination, a court may in its discretion review the record and hear oral argument on the matter. *See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir.1990). Furthermore, a court may in its sound discretion afford a degree of deference to the magistrate's Report and Recommendation. *See Raddatz*, 447 U.S. at 676, 100 S.Ct. 2406, 65 L.Ed.2d 424.

In a case where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie*, No. 96 Civ. 324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). "Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Fairfield Financial Mortg. Group, Inc. v. Luca*, No. 06 Civ. 5962, 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011).

### B. *Collecto's Objections*

On March 4, 2013, the Defendant filed several objections to Judge Tomlinson's Report and Recommendation. The Defendant raises several arguments, including: (1) that the Report applied an improper standard in determining whether to certify the class; (2) that the Report erred analyzing the threshold requirement of a consumer debt; (3) that the Report erred in determining that an individualized defense does not warrant denial of class certification; (4) that the Report incorrectly concluded that the Plaintiff had met her burden of establishing her own adequacy as a class representative and that of proposed class counsel; and (5) that the Report's analysis under Rule 23(b)(3) is lacking. The Court will address each contention in turn.

### 1. As to Whether the Report Applied an Improper Standard

First, the Defendant argues that the Report failed to hold the Plaintiff to her proper burden of proof under Rule 23. The Report stated the relevant standard, in part, as follows:

> In determining whether to certify a class, courts take a liberal rather than a restrictive approach. *See Caridad v. Metro–North Commuter RR*, 191 F.3d 283, 291 (2d Cir.1999) (finding that "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a

> restrictive interpretation"). Indeed, a motion for class certification is not an occasion for examination of the merits of the case. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 [94 S.Ct. 2140, 40 L.Ed.2d 732] (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks omitted); *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.2006) (holding that it is improper for a court to assess "any aspect of the merits unrelated to a Rule 23 requirement").

(Report & Recommendation at 6–7). Collecto asserts that this statement of the guiding principles of Rule 23 is inaccurate because the current state of the law is that a class may only be certified if after a *rigorous* analysis, the prerequisites of Rule 23(a) have been satisfied. In this regard, the Defendant contends that the party seeking clarification bears a "heavy burden" of establishing that each of these prerequisites has been met. In addition, the Defendant points out that the *Caridad* decision cited in the Report has since been overruled, and that it is now acceptable for courts to examine the merits when determining the propriety of class certification when it is necessary to do so.

The Defendant is correct in that the *Caridad* decision has been expressly overruled by the Second Circuit. Nevertheless, the Report does not contain a legal error. While *Caridad* was overruled, the main principle that was subsequently rejected in that decision was not the language cited to by Judge Tomlinson—that in determining whether to certify a class, courts take a liberal rather than a restrictive approach—but an entirely discrete notion. Previously under *Caridad*, plaintiffs needed to only make "some showing" that certain perquisites of Rule 23 were met. However, in *In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir.2006), the Second Circuit disavowed the "some showing" standard of *Caridad*. In short, *Caridad* was overruled in that the Second Circuit now expressly requires a definitive assessment of Rule 23 requirements.

Therefore, while the *Caridad* decision is no longer binding precedential authority, the legal principle utilized in the Report is not. Indeed, many courts have implicitly harmonized the idea of a liberal approach and a rigorous analysis. *See, e.g., Massey v. On–Site Manager, Inc.,* 285 F.R.D. 239, 244 (E.D.N.Y.2012) (noting that a court may not certify a putative class unless it has performed a "rigorous analysis" but that "[d]espite this Court's obligation to carefully analyze each prong of Rule 23 before granting class certification, '[t]he Second Circuit has emphasized that Rule 23 should be "given liberal rather than restrictive construction"' and has shown a 'general preference' for granting rather than denying class certification.") (internal citations omitted); *see also Pagan v. Abbott Labs. Inc.,* 287 F.R.D. 139, 144 (E.D.N.Y.2012) (Spatt, J.); *Ramos v. SimplexGrinnell LP,* 796 F.Supp.2d 346, 353 (E.D.N.Y.2011).

■ Next, the Defendant takes issue with the language in the Report that "a motion for class certification is not an occasion for examination of the merits of the case." Collecto is correct that if a factual dispute arises concerning one of the Rule 23 requirements, the Court must resolve the dispute irrespective of whether it involves a merit issue. Indeed, in *In re IPO,* in addition to overruling *Caridad,* the Second Circuit declined to follow the dictum in another prior decision, *Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 225 (2d Cir.2006), which suggested that a district judge may not weigh conflicting evidence and determine the existence of a Rule 23 requirement just because that requirement is identical to an issue on the merits. However, that does not mean that the relevant statement in the Report with respect to the merits is incorrect. In fact, Judge Tomlinson cited to *In re IPO* in support of that legal proposition to further clarify that it is improper for a court to assess "any aspect of the merits *unrelated* to a Rule 23 requirement". Thus, this Court has no reason to doubt that Judge Tomlinson understood that if any factual disputes arose as to any of the requirement elements of Rule 23, such questions could be resolved at this early stage of the proceedings.

■ To be clear, "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir.2010). As the Supreme Court recently observed:

Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. ... [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and [ ] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

*Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374, 390 (2011) (citations and internal quotation marks omitted); *see also Ohio Public Employees Retirement System v. Gen. Reinsurance Corp. (In re Am. Int'l Group Inc.),* 689 F.3d 229, 237 (2d Cir.2012); *Oakley v. Verizon Comm'ns, Inc.,* No. 09 Civ. 9175(CM), 2012 WL 335657, at *12, 2012 U.S. Dist. LEXIS 12975, at *34 (S.D.N.Y. Feb. 1, 2012) (holding that while "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, ... where merits issues cannot be avoided they must be addressed"). Thus, "the United States Supreme Court has made it clear that courts cannot certify classes where Rule 23 requirements are not met, and should not contort the requirements in order to certify." *Oakley,* 2012 WL 335657, at *12, 2012 U.S. Dist. LEXIS, at *35.

■ In the Court's view, Judge Tomlinson did comply with this legal standard and engaged in a rigorous analysis with respect to each necessary element. The Report's examination of the Rule 23 requirements utilized accurate statements of the law, as evi-

denced by the fact that when assessing each element of the standard, Judge Tomlinson referred to the most recent class certification cases, such as *Dukes*, —— U.S. ——, 131 S.Ct. 2541 (2011). Moreover, after reviewing the entire Report and its objections, the Court notes that whether viewing the motion liberally or through a more rigorous lens, the Court would reach the same ultimate conclusion.

Therefore, the Court rejects the objection by the Defendant that the Plaintiff was not held to the proper burden of proof or that the Report applied an incorrect legal standard.

### 2. As to Whether the Report Erred in Analyzing the Threshold Requirement of a Consumer Debt

Next, the Defendant argues that the Report and Recommendation erred in analyzing the threshold requirement of a consumer debt.

A claim under the FDCPA must involve a consumer debt, meaning it applies to the obligation of a consumer to pay money arising from a transaction for personal, family, or household purposes. *See* 15 U.S.C. § 1692(a). Thus, in order to recover in the present case, each class member would bear the burden of establishing that the debt they have with Verizon is a consumer debt, as opposed to a non-consumer debt. The Defendant contends that the standard utilized by Judge Tomlinson was not "sufficiently rigorous" to determine that the Plaintiff met her burden of establishing that the potential class members are "consumers" for purposes of the FDCPA.

The Report stated that "common-sense suggests that at least some percentage of the 18,949 letters were sent to Verizon Wireless customers, and that potential class members likely number in the thousands." (R & R at 13.) The Defendant argues that this assumption was not based on any admissible evidence submitted by the Plaintiff. Rather, it asserts that this finding was based in part on language in the contract that requires Collecto to comply with the FDCPA whenever it applies, but that this does not transform business debt to consumer debt. In addition,

the Defendant points out that the Report's determination also relied on the nomenclature used in the Plaintiff's proposed Class A definition—inserted for the first time in the Plaintiff's Reply Memorandum—that the Plaintiff seeks to represent only Verizon Wireless account holders, as opposed to Verizon Business or Verizon Telecom customers.

However, according to the Defendant, merely because an account is a Verizon Wireless account does not mean that it is consumer debt for purposes of the FDCPA. It is the purpose for which the debt is incurred that is dispositive. In short, the Defendant argues that the assumption that the proposed class is comprised of consumers is inconsistent with the rigorous analysis required by the Supreme Court. Furthermore, the Defendant maintains that the threshold issue of a consumer debt weighs against commonality, typicality, and superiority. In particular, it states that this case would require an individualized inquiry into each and every class member's debt to determine whether the underlying financial obligation is consumer debt for purposes of the FDCPA, which is a highly fact driven determination.

▮▮▮▮ With regard to numerosity, as an initial matter, there is no requirement that the exact number of class members be known for class certification. *In re Med. X–ray Film Antitrust Litig.*, No. CV–93–5904, 1997 WL 33320580, at *3 (E.D.N.Y. Dec. 26, 1997) (citing *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996)). Judge Tomlinson undoubtedly made certain assumptions necessary to her finding, including that at least a significant portion of the 18,949 letters were sent to Verizon Wireless customers and concerned personal debt. Nevertheless, "courts are empowered to 'make common sense assumptions to support a finding of numerosity.'" *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y.2001) (quoting *German v. Fed. Home Loan Mort. Corp.*, 885 F.Supp. 537, 552 (S.D.N.Y.1995)). The Court finds that her common sense assumption here was logical and reasonable. This assumption was particularly apt here where Collecto's agreement with Verizon with regard to Verizon Wireless accounts

contained a provision in which Collecto was mandated to comply with the FDCPA, but this provision was not contained in language pertaining to Collecto's terms with regard to Verizon "Business" or "Telecom" accounts.

■■■ More importantly, the Defendant's argument for the denial of class certification because of the requirement of a personal debt for purposes of recovering under the FDCPA is without merit. "Contrary to [the D]efendant['s] assertion, the need to determine the consumer nature of a debt does not automatically preclude class certification. Instead, courts should examine the general nature of the debts and the ease of separating consumer from business debts finding class certification appropriate in a variety of circumstances." *Berrios v. Sprint Corp.*, No. CV–97–0081(CPS), 1998 WL 199842, at *9 (E.D.N.Y. March 16, 1998).

In a similar FDCPA action, *Selburg v. Virtuoso Sourcing Group, LLC*, No. 1:11–cv–1458–RLY–MJD, 2012 WL 4514152 (S.D.Ind. 2012), Chief District Judge Richard L. Young explored the argument by the defendant that the class definition was not ascertainable because it required an inquiry as to whether an individual incurred a consumer debt (and thus within the scope of the FDCPA) or a non-consumer debt (and instead outside the FDCPA's scope). Almost identical to the arguments by Collecto, in *Selburg*, the defendant alleged that the class was impermissible because it would require "individualized inquiries, or mini-trials" to determine whether the debt at issue was subject to the FDCPA. There, the defendant merely submitted an affidavit from its CEO that included the conclusory statement that the company "generally [did] not know, and ha[d] no way of knowing, whether a particular individual's delinquent obligation was incurred primarily for personal, family, or household purposes." However, Judge Young found that while this went to the heart of separating consumer debt from non-consumer debt under the FDCPA, "no additional evidence ha[d] been provided for whether the proposed class criteria would produce false positives or anything documenting the kind of arduous individual inquiries that may be necessary. If unsupported conclusory statements such as

these were enough to defeat class certification, then FDCPA claims would rarely become class actions as anticipated in the statute." *Id.* at *3. The same holds true in this case.

Moreover, Judge Young noted, as several other courts have, that "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA." *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D.Ill. 2001); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D.Ill.2001) ("If the need to show whether each loan transaction was a consumer rather than a commercial one barred a class action, there could be no FDCPA class actions, because only consumer loans come under FDCPA."); *In re CBC Companies, Inc. Collection Letter Litig.*, 181 F.R.D. 380, 385 (N.D.Ill.1998) (denying a motion to decertify in finding that if business versus personal debt ruined commonality then it would be impossible to bring a FDCPA class action if there were a chance a possible class member used a credit card for business purpose, which would be "contrary to the clear remedial goals of the FDCPA"). In this regard, the Court notes that the Defendant is unable to point to a single FDCPA class action case where the nature of the underlying debts at issue served to bar certification.

■■■ The Defendant asserts that it cannot be determined on an administrative basis by looking at the records of Collecto or Verizon whether a particular proposed class member's account is properly subject to the FDCPA. However, it appears to the Court that the process of determining whether a debt is a consumer debt would be "relatively straightforward." There is no reason to believe that the information could not be obtained from Verizon's own customers. For instance, in *Ditty v. CheckRite, Ltd.*, No. 2:95–CV–430C, 1998 WL 663357, 1998 U.S. Dist. LEXIS 12940 (D.Utah Aug. 13, 1998), the court stated that "the use of a personal check, as identified on the defendants' computer system, creates a rebuttal [sic] pre-

sumption that the debt was consumer in nature and is sufficient to make out plaintiffs' *prima facie* case. If the defendants wish to rebut that presumption in individual cases, they are free to do so." *Id.* at *2, 1998 U.S. Dist. LEXIS 12940, at *5–6 (citation omitted). Also, another court noted, "[w]hile the determination of whether each check was written for personal or business purposes may take some effort, the Court does not believe that the task would be extraordinarily difficult because the nature of the check, i.e., personal or business, should indicate the type of debt." *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271 (W.D.Mich.2001). Furthermore, contrary to Collecto's assertions, "[s]uch issues of proof, should they arise, can be addressed 'in a manner which will not require the testimony of each and every' recipient of the [ ] letter." *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D.Va.2000) (rejecting the argument that determination of the status of the debt as consumer debt predominated over common issues).

Further, even if Collecto cannot differentiate between consumer debt and non-consumer debt for the 18,949 collection letters it has sent out, as in *Selburg*, "this fact alone does not preclude class treatment." *Selburg*, 2012 WL 4514152, at *3. As the Plaintiff suggested, class members may be asked a single question to determine whether they are entitled to relief. *See Wilkerson*, 200 F.R.D. at 610 (finding the "fact that class certification ... may require the parties to ask the individual class members one question does not automatically establish that individual issues 'predominate' " (citing *Wells v. McDonough*, 188 F.R.D. 277, 279 (N.D.Ill.1999))). The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n. 4 (7th Cir.1974) ("Even if it is necessary to review the contracts individually to eliminate business purchases, ... such a task would be neither hereculean [sic], inhibiting, nor for that matter ... unique.") (internal citations omitted).

Finally, any potential hardship in determining the class can be alleviated by Rule 23(c)(1)(C), which allows the court to alter or amend an order that grants class certification before final judgment. "In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case." *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D.Conn.2000).

As noted in *Selburg*, "[a]t bottom, a class action is the superior method to the fair and efficient adjudication of this controversy even if additional ministerial inquiries are necessary." 2012 WL 4514152, at *4. "Should a debt collection company as large and as sophisticated as [Collecto] be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted." *Macarz*, 193 F.R.D. at 57; *see Wise v. Cavalry Portfolio Servs., LLC*, No. 3:09–CV–86, 2010 WL 3724249, at *6 (D.Conn. Sept. 15, 2010).

Therefore, whether considered as part of the ascertainability and numerosity inquiries, or whether viewed as part of the elements of commonality, typicality, and superiority, the Court does not find that under the circumstances of this case, individualized inquiries into each class member's debt precludes class certification. Accordingly, the objection as to that portion of Judge Tomlinson's Report with regard to the threshold requirement of a consumer debt is rejected.

### 3. As to Whether the Report Erred with Regard to Individualized Defenses

The Defendant also claims that the Report overlooks the class certification problem created by a unique defense applicable to the Plaintiff.

The Defendant emphasizes that for the Plaintiff to recover for allegations that a debt referenced in a collection letter is not valid, she is required to follow a certain procedure set forth in the FDCPA. Specifically, a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA. Instead, a party is required to

utilize the specific statutory debt dispute and validation procedure set forth in the FDCPA, 15 U.S.C. § 1692(g), before commencing an action in court based on the claim that the debt in question is not owed. Through this procedure, a consumer must contact the collector to contest the debt before the final collection attempt.

The Defendant argued before Judge Tomlinson that Butto is subject to the individualized defense of failing to first comply with this debt dispute procedure before commencing an action in federal court. If this defense is meritorious, then the Plaintiff would arguably be unable to recover under the FDCPA. Thus, the Defendant argues that because Butto failed to follow this debt validation procedure, Judge Tomlinson did not adequately analyze whether this unique defense might apply.

However, the Report found that while Butto did not first attempt to dispute the debt with Collecto, she is not mandated to do so under the relevant precedent of *Bleich v. Revenue Maximization Group, Inc.*, 233 F.Supp.2d 496 (E.D.N.Y.2002) because she is not contending that the debt referenced in the collection letter was not valid, either because it was inaccurate or already paid. To the contrary, the Report found that Butto is attacking the Defendant's alleged practice of charging unearned fees and violating the FDCPA when the collection fee the Defendant told her was owed had in fact not been incurred. In other words, the Report essentially found that there was no unique defense as to Butto.

To the extent that Judge Tomlinson suggested that this individual defense as to Butto would not be successful, the Court declines to adopt that precise finding. The Court recognizes that a valid argument could be made as to the merits of that defense. In particular, if one characterizes the tacked on collection fee as part of the "debt"—even though not the original debt—it may be said that the Plaintiff is disputing the accuracy of the debt as a whole. Nevertheless, the Court will not resolve at this early stage of the litigation whether, as a matter of law, the Plaintiff Butto was required to comply with the debt dispute procedures outlined in the FDCPA. As the Plaintiff points out in her opposition, the merits of the purported unique defense are not necessarily relevant at the certification stage.

What is relevant and what ultimately drives this analysis is that even if this defense is presumed valid, the existence of such an individualized defense would not preclude class certification. This is because Collecto has not explained how this potential defense would threaten to become the focus of the litigation. As Judge Tomlinson explained in her Report, the existence of defenses unique to the named plaintiff may preclude class certification only if the unique defenses "threaten to become the focus of the litigation." *Gary Plastic Packaging v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir.1990); *see also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 180 (S.D.N.Y.2008) ("Second, even if GS had shown the presence of a meritorious unique defense as to Plaintiff, the Court finds that the litigation of this potential defense will not 'threaten to become the focus of the litigation,' . . . because it does not go to the heart of Plaintiff's case and will not require considerable time and effort to rebut."); *In re Ashanti Goldfields Sec. Litig.*, No. 00 Civ. 0717(DGT), 2004 WL 626810, at * 13 (E.D.N.Y. Mar. 30, 2004) ("[E]ven in cases where a unique defense might exist, a plaintiff subject to a unique defense is not an appropriate class representative only if that unique defense might draw the focus of the litigation away from common legal or factual issues.") (citations and internal quotation marks omitted); *In re Indep. Energy Holdings*, 210 F.R.D. at 481 ("While the extent of non-reliance on [plaintiffs'] part will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members.").

Here, Collecto largely focuses on why Butto would be subject to this particular defense. In this regard, the Defendant merely asserts that Butto should not be permitted to represent a class of individuals who actually meet the prerequisites to an FDCPA claim. However, the Court finds that this unique defense does not overshadow the common issues that dominate this class action proceeding.

For this reason, the Court rejects the Defendant's objection that this potential defense should preclude class certification.

### 4. As to Whether the Report Erred with Regard to Adequacy of the Class Representative and the Proposed Class Counsel

As another basis for its objections, the Defendant argues that the conclusion in the Report that the Plaintiff met her burden of establishing her own adequacy and that of the proposed class counsel is incorrect.

 Rule 23(a)(4) requires a plaintiff to establish both the ability of the named plaintiff to fairly and adequately protect the interests of the class and the adequacy of counsel retained to represent the class. Here, the Defendant attacks both elements, asserting that Butto's deposition testimony reveals her lack of knowledge concerning her own claims in this action. Also, it argues that her testimony indicates that she had abdicated control of the litigation to her attorneys, who did not inform her of a settlement offer that had been made. In this regard, the Defendant contends that the Report misinterprets the Plaintiff's deposition testimony as to these matters.

In the Court's view, the Report reasonably construed the Plaintiff's deposition testimony in finding that the Plaintiff was an adequate representative and that class counsel was qualified, experienced, and able to conduct the litigation. Also, the Court notes that the Defendant does not assert a conflict of interest between Butto and the other potential class members, which is the relevant inquiry.

Instead, the Defendant contends only that the Plaintiff has not met her burden to demonstrate her familiarity with the action; her participation in decision-making in the case; her ability or willingness to bear the costs of the action; or her understanding of the comparative merits of class and individual actions. As to these matters, the Court agrees with Judge Tomlinson that while the deposition testimony may raise some questions as to the comprehensiveness of Butto's knowledge, this testimony does not warrant denial of class certification. Indeed, the Court

agrees with the Plaintiff's response, including that as an unsophisticated customer, she should not be charged with applying the damages calculation in order to comprehend what a potential class recovery might be. Again, the Court notes that the Defendant has not identified any antagonism between the Plaintiff's claims and those of the proposed class that would interfere with her ability to act as class representative. While the Defendant again relies upon the possibility of a unique defense applicable to Butto, the Court has already found that this would not prevent class certification, which is in accordance with the findings made by Judge Tomlinson in her Report.

 With regard to the adequacy of class counsel, the Court agrees with the Report's analysis of the relevant factors, including counsel's experience in handling class actions; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. As for the issue raised by the Defendant of whether class counsel informed the Plaintiff of any settlement proposals, Butto's testimony is somewhat ambiguous. However, reviewing Butto's testimony in its entirety, the court does not find that class counsel has abdicated his duty under the Rules of Professional Conduct to inform his client of any settlement proposals, or otherwise engaged in any other unethical conduct. Therefore, the Court does not find that class counsel is inadequate on this basis.

In sum, the Court dismisses the Defendant's objections that the Report contains errors as to the requirements of adequacy of representation pursuant to Rule 23(a)(4).

### 5. As to Whether the Report's Rule 23(b)(3) Analysis is Lacking

Finally, the Defendant asserts that the Report's analysis under Rule 23(b)(3)—in particular, whether a class action is superior to other available methods to resolve the current controversy and whether common issues predominate—was entirely insufficient. As to predominance, it contends that the Report found conclusorily that "the issues regarding the substantially same collection letters sent by Defendant predominate over

any issues that are subject to individualized proof," (Report & Recommendation at 22). Also, the Defendant contends that the Report overlooked the existence of individualized issues, namely the need to determine whether the accounts of the proposed class members involve "consumer" debt and whether the proposed class members utilized the debt validation procedures. With regard to superiority, the Defendant argues that the Report does not discuss the factors relevant in determining whether a class action is "superior" to other methods for adjudicating the controversy, such as the class members' interests in individually controlling the prosecution or defense of separate actions and the likely difficulties in managing a class action.

In reviewing the Report, it is apparent to the Court that the portion devoted to the Rule 23(b)(3) analysis was brief only because the Defendant merely repeated the same arguments it had asserted on the issues of commonality and typicality, such as the potential differences in the collection letters sent by the Defendant and other potential individualized issues. In the Court's view, it was unnecessary for Judge Tomlinson to repeat her earlier findings in connection with these arguments, as they had already been explored at length. Thus, her findings as to predominance and superiority were not conclusory and were firmly supported by the well-stated reasoning throughout the Report.

 Further, although the Report did not expressly analyze the relevant factors for superiority, it does not appear that the Defendant raised any arguments before Judge Tomlinson as to many of these factors. In any event, the Court concurs with and adopts her conclusion as to superiority. The Court firmly agrees that a class action here is the superior method for the fair and efficient adjudication of this case. The Defendant now asserts that potential class members may stand to recover more in individual actions than in a class action, rendering the class action an inferior action from the perspective of potential class members. This argument is rejected by the Court. Under Rule 23(c)(2)(A), members of class actions maintained under Rule 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the Court, will be excluded from the class through an "opt out" provision. This would ensure that individual interests are respected. Moreover, the possibility that a putative class member may be entitled to a greater recovery if they pursue claims on their own arises in every class action. That vague possibility is not a ground for denying class certification. In this regard, the Court finds that challenging the content of a standard form letter is the type of suit that is more efficiently brought as a class action than as a series of individual actions, with the inefficiency, high costs, and the risk of inconsistent outcomes posed by that method.

As for any other considerations not expressly considered in the Report, the parties did not brief any arguments surrounding those factors beyond what has already been discussed in this decision. The Court finds that all the relevant conditions with regard to a valid proper class action are met. The interest of litigants in raising separate actions is preserved by the opt-out procedures; there is no evidence of any related existing litigation; this forum is ideal since one of the Plaintiff's claims is based on New York State law, namely New York General Business Law § 349; and no particular difficulty in managing the class action has been identified beyond the concerns raised by the Defendant that have already been discussed.

Therefore, despite the relative brevity of the Report's section on the Rule 23(b)(3) analysis, the Court agrees with the ultimate finding and accordingly rejects the Defendant's objection that this precludes class certification.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Judge Tomlinson's Report and Recommendation is adopted in its entirety; and it is further

**ORDERED** that the Plaintiff's motion for class certification is granted in part and denied in part, as set forth in this Decision and Order.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

Plaintiff Victoria Butto has moved for class certification in this Fair Debt Collection Practices Act case.[1] *See* DE 50. Plaintiff's Motion has been referred to this Court to issue a Report and Recommendation on: (i) whether this case should be certified as a class action pursuant to FED.R.CIV.P. 23; (ii) whether the Plaintiff Victoria Butto should be appointed as class representative; and (iii) whether Lemberg & Associates, LLC, should be appointed as class counsel. *See* DE 60. For the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Victoria Butto ("Plaintiff" or "Butto") stopped paying her Verizon Wireless cellular phone bill in 2008 due to a dispute over charges on the bill. *See* Affidavit of Victoria Butto in Supp. of Class Cert. ("Butto Aff.") [DE 51–11], ¶ 4. Plaintiff's Verizon Wireless account was subsequently transferred to Defendant Collecto, a debt collection company, for collection of the debt. Collecto Supp. Int. Resp., Ex. F to Pl.'s Mem., No. 8. The Verizon Wireless Services Agreement between Butto and Verizon ("Butto–Verizon Agreement") provides that Verizon may charge Butto with any collection fees that Verizon is charged by a collection agency used to collect a debt from Butto. Butto–Verizon Agreement, Ex. B to Pl.'s Mem. Further, pursuant to a collection agreement between Verizon and Collecto (the "Collection Agreement"), Collecto is compensated by Verizon on a contingency basis, and a commission is earned only when the debt is collected, not before. Collection Agreement, Ex. E to Pl.'s Mem., at 10.

Shortly after Butto's Verizon account was transferred to Collecto, Butto received a collection letter from Collecto concerning the account ("Collection Letter"). *See* Collection Letter, Ex. G to Pl.'s Mem. The letter de-manded payment of a "principal" amount of $379.31, $0.00 in interest, and "Fees/Coll Costs" of $68.27 (the "Fees & Costs"). *Id.* Plaintiff alleges that these Fees & Costs were contingent fees and at the time Collecto sought to collect them, they had not been charged by Collecto to Verizon. Pl.'s Mem. at 3. Therefore, Plaintiff maintains, at the time the Collection Letter was sent, no commission had been earned and Butto owed no fees to Verizon. *Id.* (citing Collection Agreement, Butto–Verizon Agreement, Collecto Int. Resp., Ex. D to Pl.'s Mem.). Further, Plaintiff argues that because Collecto is compensated by Verizon on a contingency basis only—or when the debt is actually collected—the Fees & Costs were not expressly authorized by the Collection Agreement because Verizon was never charged by Collecto. Pl.'s Mem. at 3 (citing Collection Agreement at 10). Plaintiff does not appear to be asserting that she actually paid the Fees & Costs; rather, she claims that the Defendant's actions in charging collection fees not yet owed violates the FDCPA. *See generally* Am. Compl. In the year prior to the initiation of this action, Collecto sent 18,949 letters to Verizon customers whose accounts were placed with Collecto for collection. Those letters included a collection fee. Collecto Supp. Int. Resp. No. 10. Collecto accumulated $14,986.00 in fees on Verizon debts in the year preceding the filing of this action. *See id.* No. 14; Pl.'s Mem. at 3.

### B. Procedural Posture

On June 23, 2010, Plaintiffs Butto and Houser ("Plaintiffs") filed the Complaint in this action alleging common law fraud as well as violations of the Fair Debt Collection Practices Act, 15 U.S.C. *et seq.* ("FDCPA") and New York General Business Law, against Defendant Collecto, Inc. ("Collecto"), a debt collection company. DE 1. On October 26, 2010, before Defendant interposed an answer, Plaintiffs filed an Amended Complaint. DE 3. Plaintiffs allege that Defendant attempted to recover a collection fee on a debt before the fee was incurred, in violation of the FDCPA. Am. Compl. ¶¶ 19–24.

---

1. Co–Plaintiff Lakesha Houser maintains only individual claims and is not a proposed class rep-resentative. Pl.'s Mem. of Law in Supp. of Class Cert. ("Pl.'s Mem."), at 1 n. 1.

Specifically, Plaintiffs allege that Defendant's actions constitute violations of FDCPA provisions prohibiting the use of deception to collect a debt (15 U.S.C. § 1692e(2), (10)); prohibiting the collection of an unauthorized amount (15 U.S.C. § 1692f(1)); and requiring a debt collector to send the consumer a written notice setting forth the amount of a debt (15 U.S.C. § 1692g(a)(1)). *See* Am. Compl. ¶¶ 48–63. On November 29, 2010, Defendant interposed an Answer to the Amended Complaint. *See* DE 5.

On August 9, 2012, Plaintiff Butto filed a Motion for Class Certification. *See* DE 50. Defendant opposed the Motion [DE 55] and Plaintiff submitted a Reply in Support [DE 59], modifying the class definitions in response to Defendant's objections, as described below. Plaintiff's Motion has been referred to this Court to issue a Report and Recommendation regarding: (i) whether this case should be certified as a class action pursuant to Federal Rule 23; (ii) whether the Plaintiff Butto should be appointed as class representative; and (iii) whether Lemberg & Associates, LLC, should be appointed as class counsel. *See* DE 60.

## II. THE APPLICABLE LAW

### A. FDCPA

■■■■■ "The FDCPA was enacted to 'eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Bank v. Pentagroup Fin., LLC,* No. 08–CV–5293, 2009 WL 1606420, at *2 (E.D.N.Y. June 9, 2009) (quoting 15 U.S.C. § 1692(e)). The FDCPA regulates the collection of consumer debts, defined as debts incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see also Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors."). When evaluating an FDCPA claim, courts apply the objective "least sophisticated consumer" standard. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) (adopting the objective standard known as the "least sophisticated con-

sumer" to ensure the FDCPA "protects all consumers, the gullible as well as the shrewd"); *see also Pifko v. CCB Credit Servs., Inc.,* No. 09–CV–3057, 2010 WL 2771832, at *3 (E.D.N.Y. July 7, 2010); *Ostrander v. Accelerated Receivables,* No. 07–CV–827, 2009 WL 909646, at *5 (W.D.N.Y. Mar. 31, 2009). The FDCPA includes a statutory mechanism for the computation of class awards. *See* 15 U.S.C. §§ 1692k(a)(2)(B), (b)(2).

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Section specifically identifies conduct by a defendant which violates the statute. *See* 15 U.S.C. § 1692e(1)–(16); *see also Clomon,* 988 F.2d at 1318 ("The sixteen subsections of § 1962e set forth a non-exhaustive list of practices that fall within this ban."). Such conduct includes the false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for collection of a debt." 15 U.S.C. § 1692e(2). Section 1692e also prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." 15 U.S.C. § 1692e(10); *see also Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996) (finding that "deceptiveness" includes ambiguity). A single violation of Section 1962e is sufficient to establish civil liability under the FDCPA. *See* 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter").

Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Pursuant to Section 1692g(a), a debt collector must send the consumer a written notice containing the amount of the debt, among other things. *See* 15 U.S.C. § 1692g(a). Conduct such as that alleged here has been found to violate the statute.

*See, e.g., Hernandez v. Miracle Financial Inc.,* No. 11–4074, 2011 WL 6328216, at *3 (E.D.N.Y. Dec. 13, 2011) (finding plaintiff stated a claim under the FDCPA sufficient to withstand a motion to dismiss regarding the inclusion in a collection letter of a contingent fee not yet charged); *Gathuru v. Credit Control Services, Inc.,* 623 F.Supp.2d 113, 121–122 (D.Mass.2009) (granting summary judgment in favor of plaintiff and finding that collection notice falsely represented amount owed where defendant attempted to collect a contingent fee not yet due).

When a plaintiff establishes a violation, he or she may recover statutory damages in an amount not to exceed $1,000, plus any actual damages sustained. *See* 15 U.S.C. §§ 1692k(a)(1), (a)(2)(A). Recovery in FDCPA class actions is limited to $1,000 in statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class. *See* 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B).

**B. Rule 23**

Rule 23(a) provides that:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a).

In addition to satisfying Rule 23(a), a plaintiff must satisfy one of three criteria set forth in Rule 23(b). *Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994); *Passafiume v. NRA Group, LLC,* 274 F.R.D. 424, 428 (E.D.N.Y.2010). Here, Plaintiff Butto seeks certification under Rule 23(b)(3) (*see* Pl.'s Mem. at 11) which provides that certification is appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3).

In determining whether to certify a class, courts take a liberal rather than a restrictive approach. *See Caridad v. Metro–North Commuter RR,* 191 F.3d 283, 291 (2d Cir.1999) (finding that "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation"). Indeed, a motion for class certification is not an occasion for examination of the merits of the case. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks omitted); *In re IPO Sec. Litig.,* 471 F.3d 24, 41 (2d Cir. 2006) (holding that it is improper for a court to assess "any aspect of the merits unrelated to a Rule 23 requirement").

**III. DISCUSSION**

**A. Rule 23(a) Analysis**

**1. *The Proposed Classes***

Plaintiff initially proposed to certify two classes, as follows:

**Class A**

**All consumers in the State of New York who were sent a collection letter by Defendant within one year prior to the filing of this action, and which was not returned as undeliverable, which letter included a collection fee for Verizon service which had not yet been incurred at the time the letter was sent.**

**Class B**

**All consumers in the State of New York from whom Defendant collected unauthorized "collection fees" on behalf of Verizon.**

Pl.'s Mem. at 3–4 (emphasis in original).

As a first concern, Defendant argues that Plaintiff's Class B definition is flawed in part because "Plaintiff is not a member of Class B and therefore cannot serve as its representa-

tive." Def.'s Opp. at 9. Defendant argues that Class B clearly encompasses individuals from whom Defendant actually procured collection fees and Plaintiff has never paid such fee. *Id.* (citing Deposition of Victoria Butto ("Butto Tr."), Ex. 6 to Aff. of John Elliot in Opp. to Pl.'s Motion for Class Cert. ("Elliot Aff."); Ex. 5 to Pl.'s Mem., at 33, 38–40, 49). In her Reply, Plaintiff has amended the Class B definition to include "[a]ll consumers in the State of New York from whom Defendant collected 'collection fees' on behalf of Verizon on Verizon Wireless accounts." Pl.'s Reply Mem. in Supp. of Class Cert. ("Pl.'s Reply") [DE 59] at 4. Plaintiff's amended Class B definition removes the word "unauthorized" from the initial definition, in response to Defendant's argument that describing the collection fees as "unauthorized" speaks to the ultimate issue in the case. *See* Pl.'s Reply at 4; Def.'s Opp. at 10. Plaintiff also amended the definition to include only those fees collected on behalf of Verizon on Verizon Wireless accounts, presumably in response to Defendant's argument that Verizon accounts are used for business purposes not regulated by the FDCPA (as outlined more fully below). *See* Pl.'s Reply at 2–4; Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Class Cert. ("Def.'s Mem.") at 12. The amended definition clearly still encompasses only those individuals from whom Defendant actually collected a fee.

■ The Supreme Court has "repeatedly held that 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). Indeed, "[c]ontrolling law is clear that 'a class representative must be part of the class ...'" *In re Initial Pub. Offering Sec. Litig.,* No. 21 MC 92, 2008 WL 2050781, at *3 (S.D.N.Y. May 13, 2008) (noting that the court was not aware of any case permitting a class representative who was not a member of the class) (citing *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (affirming denial of class certification under Rule 23(a) because proposed class representative was not a member of the class); *In re Vitamin C Antitrust Litig.,* 279 F.R.D. 90, 96, 100–102 (E.D.N.Y.2012) (finding plaintiff could not serve as class representative where it was not a member of the class); *Bentley v. Verizon Bus. Global, LLC,* No. 07 Civ. 9590, 2010 WL 1223575, at *4 (S.D.N.Y. Mar. 31, 2010) (denying class certification where plaintiff was not a member of the proposed class); *Kuhne v. Midland Credit Mgmt., Inc.,* No. 06 Civ. 5888, 2007 WL 2274873, at *2 (S.D.N.Y. Aug. 9, 2007) (granting judgment on the pleadings where plaintiff alleging FDCPA violations was not a member of the putative class defined in the complaint); *McLean v. Merrifield,* No. 00–CV–0120, 2002 WL 1477607, at *6–8 (W.D.N.Y. June 28, 2002) (denying class certification because proposed class representatives were not members of the class); *Free World Foreign Cars, Inc. v. Alfa Romeo, S.P.A.,* 55 F.R.D. 26, 28–9 (S.D.N.Y.1972) (same).

■ In her Reply, Plaintiff does not cite any authority which deviates from this line of cases. Plaintiff argues that *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) supports the proposition that even though Plaintiff Butto did not pay a collection fee, she still may serve as a representative of Class B. *See* Pl.'s Reply at 4. In *Keele,* as here, a plaintiff alleged FDCPA violations where debt collectors sent plaintiff a letter seeking collection fees not yet owed. *Id.* at 591–93. The plaintiff in *Keele* moved for certification of four separate classes, all defined in some way by the receipt of defendants' collection letters. *Id.* at 593 n. 5. The defendants in *Keele* asserted that the plaintiff had no standing to sue because she never paid any of the sought-after collection fees, and therefore could not represent a class of plaintiffs who received similar letters but also paid the fee. *Id.* at 591–93. The court found that the injury common to the class representative was not the payment of the collection fees, but rather the receipt of the defendants' collection letters, which were received by every member of the proposed classes, including the proposed class representative. *See id.* at 593 (noting that the FDCPA does

not require proof of actual damages as a precursor to the recovery of statutory damages). Here, unlike in *Keele*, Plaintiff's Class B definition does not include an injury common to Plaintiff and the proposed class. The only injury common to Class B members is Defendant's collection of the allegedly illegal fee. The only other case cited by Plaintiff on this issue, *Duprey v. Connecticut Dept. of Motor Vehicles*, 191 F.R.D. 329 (D.Conn. 2000), is inapposite. That case does not address the issue of whether a class may be certified where the proposed class representative is not a member of the class; it merely stands for the proposition that typicality is not precluded where differences in damages arise from a disparity in injuries among potential class members. *Id.* at 337. Further, "[a] determination that the named plaintiff is not a member of the class ... is dispositive, and in that event the court need not consider the other class certification requirements." *Bentley*, 2010 WL 1223575, at *4 (citations omitted).

Plaintiff Butto does not allege in the Complaint or Amended Complaint that she ever paid a collection fee. *See generally* DE 1, 3. Defendant claims that Butto also denied paying any such fee during her deposition. Def.'s Opp. at 9 (citing Butto Tr. at 33, 38–40, 49). While Plaintiff does not appear to affirmatively state in the deposition excerpts provided that she did not pay the collection fee, she certainly indicates that she was not willing to pay such fee. *See* Butto Tr. 38:24–40:11. Further, Plaintiff in the instant motion does not argue that she in fact paid a collection fee. *See* Pl.'s Reply at 4. Since it seems that Defendant never collected a fee from her, Butto cannot be a member of Class B. As noted, under the relevant precedents, a determination that the named plaintiff is not a member of the class is dispositive, and other class certification requirements need not be considered. *See Bentley*, 2010 WL 1223575, at *4. Therefore, the Court respectfully recommends to Judge Spatt that Plaintiff's motion for class certification as to proposed Class B be denied.

### 2. *Class A Analysis*

Unlike the proposal regarding the composition of Class B, Plaintiff Butto has alleged facts which place her within the framework of the proposed Class A plaintiffs.

#### a. Numerosity

Numerosity is satisfied when the class is numerous enough to make joinder of all members impracticable. FED.R.CIV.P. 23(a). A plaintiff is not obligated to identify the exact number of class plaintiffs. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993); *Passafiume*, 274 F.R.D. at 429; *Boyd v. Interstate Brands Corp.*, 256 F.R.D. 340, 357 (E.D.N.Y.2009). However, the Second Circuit has previously determined that numerosity is presumed at a figure of 40. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). "[C]ourts may make common sense assumptions to support a finding of numerosity." *Aramburu v. Healthcare Fin. Servs.*, No. 02 CV 6535, 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005) (quoting *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y.2001)) (internal quotations omitted). Numerosity may be established where "the defendant used standardized forms in collecting debts and evidence in the record reflects that the potential class members number in the thousands." *Aramburu*, 2005 WL 990995, at *2–3.

Plaintiffs argue that the 18,949 collection letters Collecto sent on behalf of Verizon establish numerosity. Pl.'s Mem. at 6–7. Defendant does not appear to dispute that these letters were sent. Rather, Defendant argues that many of the individuals receiving these letters may not be members of the proposed class because individuals receiving the letters may have had differing agreements with Verizon and may have used Verizon accounts for business purposes, and business debt is not regulated by the FDCPA. *See* Def.'s Mem. at 12 (citing 15 U.S.C. § 1692a(5)). Defendant further argues that Plaintiff does not offer any evidence allowing for an estimation of how many consumers receiving the form letter would fall within the class. Def.'s Mem. at 12.

In response, Plaintiff submits a series of Verizon Wireless Customer Agreements from 2006–2010, illustrating that these agreements have identical language pertaining to collection fees. *See* Pl.'s Reply at 1 (citing

2006–2010 Verizon Wireless Customer Agreements, Ex. A to the Decl. of Stephen Taylor in Supp. of Pl.'s Mot. for Class Cert. ("Taylor Decl.") [DE 59–1] ). Further, Defendant has conceded that the form letter sent to Plaintiff Butto is "similar to letters sent to others." *See* Am. Compl. ¶ 25; Answer ¶ 25; Collecto Supp. Int. Resp. No. 10 (identifying 18,949 letters including collection fees that were sent to Verizon customers).

Plaintiff also argues that Verizon Wireless customers such as Plaintiff are "consumers" under the FDCPA, using their Verizon accounts "primarily for personal, family, or household purposes" as required under 15 U.S.C. § 1692a(5). *See* Pl.'s Reply at 2. Plaintiff here seeks to represent Verizon Wireless account holders only and not holders of Verizon Business or Verizon Telecom accounts. Pl.'s Reply Mem. at 3. Under the Collection Agreement, Plaintiff argues, Collecto was mandated to comply with all provisions of the FDCPA for Verizon Wireless Accounts, indicating that these accounts are consumer-related. Pl.'s Reply Mem. at 2; Collection Agreement at 52. Moreover, Verizon mandated FDCPA compliance for Verizon Wireless accounts only—not for Verizon Business and Verizon Telecom. Pl.'s Reply Mem. at 3; *see generally* Collection Agreement. The Defendant asserts that the definition of the class proposed as Class A has the potential to encompass non-class members. Pl.'s Reply Mem. at 3. In response, Plaintiff is amending the Class A definition to read as follows below. The Court has placed in boldface and italics the additional wording included in the amended definition:

> All consumers in the State of New York who were sent a collection letter by Defendant *substantially similar to the Letter sent to Plaintiff for a Verizon Wireless account* within one year prior to the filing of this action, and which was not returned as undeliverable, which letter included a collection fee for Verizon *Wireless* service which had not yet been incurred at the time the letter was sent.

Pl.'s Reply at 3–4. The amendment clarifies that Plaintiff seeks to represent only Verizon Wireless account-holders and not Verizon Business or Verizon Telecom customers.

Further, the amended definition clarifies that Class A members are individuals who were sent collection letters "substantially similar" to the letter sent to Plaintiff.

The Court notes that it is not clear that all of Defendant's 18,949 collection letters were sent to Verizon Wireless account-holders as opposed to Verizon Business or Verizon Telecom customers. *See* Def.'s Supp. Int. Resp. No. 10 (collection letters were sent to 18,949 "Verizon customers.") However, commonsense suggests that at least some percentage of the 18,949 letters were sent to Verizon Wireless customers, and that potential class members likely number in the thousands. Based on the foregoing, the Court concludes that Plaintiff has established the first criterion of numerosity.

### b. commonality and typicality

 Commonality and typicality, although two distinct requirements for class certification, are closely related. As the Supreme Court recently clarified, "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart Stores Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131, 132 (2009)). Commonality is satisfied "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997). Put another way, what is needed is a common nucleus of operative facts or an issue that affects all members of the class. *Brown v. Kelly,* 609 F.3d 467, 475 (2d Cir.2010); *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d. Cir.1987). Indeed, this requirement is "qualitative rather than quantitative—that is, there need only be a single issue common to all members of the class." *Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y.1997); *Ayzelman v. Statewide Credit Services Corp.,* 238 F.R.D. 358, 363 (E.D.N.Y.2006). Therefore, individual circumstances of the class members may differ without precluding class certification. *See Vengurlekar v. Silverline Tech., Ltd.,* 220

F.R.D. 222, 227 (S.D.N.Y.2003) (finding that individual circumstances are acceptable if "common questions are at the core of the cause of action alleged."); *Teachers' Retirement Sys. Of Louisiana v. ACLN Ltd.,* 01–CIV–11814, 2004 WL 2997957, at *3–4, 2004 U.S. Dist. LEXIS 25927, at *11 (S.D.N.Y. Dec. 27, 2004) ("Factual variations among class members will not defeat the commonality requirement so long as the claims arise from a common nucleus of operative facts.").

▉▉▉ With regard to typicality, "Rule 23(a)(3) requires that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Assif v. Titleserv, Inc.,* 288 F.R.D. 18, 24 (E.D.N.Y.2012) (quoting *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux,* 987 F.2d at 936–937; *see also Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 72–73 (E.D.N.Y.2004) (regarding typicality, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification") (citations omitted).

Defendant argues that commonality and typicality are not met here because individualized inquiries must be made into each and every class member's debt to determine whether it is a consumer debt, since potential class members may have used their Verizon accounts for business purposes. Def.'s Opp. at 12–13. This inquiry is difficult, Defendant alleges, because whether the underlying debt is "consumer" in nature cannot be determined ministerially from any readily available set of records, and the proportion of any particular account used for business purposes will vary greatly. *Id.* at 13.

Contrary to Defendant's assertion, "the need to determine the consumer nature of a debt does not automatically preclude class certification." *Berrios v. Sprint Corp.,* No. CV–97–0081, 1998 WL 199842, at *9 (E.D.N.Y. Mar. 16, 1998); *see Macarz v.*

*Transworld Systems, Inc.,* 193 F.R.D. 46, 57 (D.Conn.2000) ("[D]ifficulties in differentiating consumer and commercial debts does not serve as a bar to class certification ..."); *Borcherding–Dittloff v. Transworld Sys., Inc.,* 185 F.R.D. 558, 563 (W.D.Wis.1999) (noting that "[d]efendant is wrong to suggest that having to separate consumer debts from commercial debts precludes certification"); *Sledge v. Sands,* 182 F.R.D. 255, 258 (N.D.Ill. 1998) (rejecting defendant's argument that the need to determine whether each class member's debt was for personal purposes ruins commonality, as it would be impossible to ever bring an FDCPA class action under this reasoning). "Instead, courts should examine the general nature of the debts and the ease of separating consumer from business debts finding class certification appropriate in a variety of circumstances." *Berrios,* 1998 WL 199842, at *9.

In *Berrios,* for example, the court granted certification of a class encompassing residential telephone accounts that may have been used for business purposes, because there was a "substantial likelihood" that the account-holders used the accounts "primarily for personal, family, or household purposes." *Id.* As noted, Plaintiff has amended the Class A definition to include only Verizon Wireless account-holders. Pl.'s Reply at 3–4. Here, as in *Berrios,* there is a "substantial likelihood" that the Verizon Wireless accounts were used primarily for personal, family, or household purposes, especially given the fact that Verizon has separate lines for Verizon Business and Verizon Telecom accounts. Further, as noted previously, under the Collection Agreement, Verizon mandated compliance with the FDCPA for Verizon Wireless accounts but not for Verizon Business and Verizon Telecom accounts. This agreement language indicates that at least Verizon believed Verizon Wireless accounts were subject to FDCPA regulations. Pl.'s Reply Mem. at 2–3; *see* Collection Agreement.

Defendant further argues that commonality and typicality are not met because individualized inquiries must be made into the particular agreements each potential class member had with Verizon, as well as into the content of the collection letters Defendant

sent to each class member, and into "other potentially individualized issues ..." Def.'s Opp. at 13. As discussed, Plaintiff has submitted Verizon Wireless customer agreements from 2006–2010, illustrating that these agreements have identical language pertaining to collection fees. *See* Pl.'s Reply at 1; 2006–2010 Verizon Wireless Customer Agreements. Further, Plaintiff's amended Class A definition clarifies that class members are individuals who were sent collection letters "substantially similar" to the letter sent to Plaintiff. Also, Defendant has conceded that the Collection Letter sent to Plaintiff Butto is "similar to letters sent to others." *See* Am. Compl. ¶ 25; Answer ¶ 25; Collecto Supp. Int. Resp. No. 10. As to any other unarticulated "potentially individualized issues," the Court observes that individual circumstances of the class members may differ without precluding class certification, as long as there is a common issue that affects all members of the class. *See Vengurlekar,* 220 F.R.D. at 227; *Teachers' Retirement Sys. of Louisiana,* 2004 WL 2997957, at *4.

Finally, Defendant contends that class certification is not appropriate because there are particular defenses unique to the named Plaintiff which preclude class certification. Def.'s Opp. at 14 (citing *Gary Plastic Packaging v. Merrill Lynch,* 903 F.2d 176, 180 (2d Cir.1990)). Specifically, Defendant alleges that Plaintiff Butto failed to utilize the specific statutory debt dispute and validation procedure set forth in the FDCPA (15 U.S.C. § 1692g), which Defendant claims is required before commencing an FDCPA action. *Id.* at 14–15 (citing *Bleich v. Revenue Maximization Group, Inc.,* 233 F.Supp.2d 496, 501 (E.D.N.Y.2002)).

The existence of defenses unique to the named plaintiff may preclude class certification if the unique defenses "threaten to become the focus of the litigation." *Gary Plastic Packaging,* 903 F.2d at 180. Defendant relies on *Bleich* to support its proposition that Plaintiff must first seek relief under the FDCPA debt dispute procedure before filing an action with the court. Def.'s Opp. at 15. In *Bleich,* the plaintiff claimed that a bill which was the subject of collection efforts

had already been paid. Demanding that the bill be paid (again), Plaintiff maintains, violated FDCPA prohibitions on false and misleading practices. *Id.* at 500. The court in *Bleich* required the plaintiff to follow the debt dispute procedure outlined in the FDCPA and held that "the allegation that the debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and misleading practices' claim under the FDCPA." *Id.* Plaintiff here argues that she does not attack the accuracy of a bill *standing alone.* Pl.'s Mem. at 6. Instead, she attacks Defendant's alleged practice of charging unearned fees and violating the FDCPA when the collection fee Defendant told her was owed had in fact not been incurred. *Id.*

Defendant also contends that Plaintiff Butto has denied signing the Butto–Verizon Agreement, which may "result in differing legal issues" among class members. Def.'s Opp. at 15 (citing Butto Tr. at 16:25–32). Defendant does not explain how this might constitute a unique defense. Plaintiff maintains that Butto has not denied signing the Agreement. Rather, Plaintiff could not authenticate her signature on a copy of the Agreement shown to her during her deposition. Pl.'s Mem. at 7 n. 1. In any case, Plaintiff asserts that whether or not Butto or other class members signed a Verizon Wireless customer agreement does not preclude recovery under the FDCPA. *Id.* at 6–7 (citing *Fedotov. v. Peter T. Roach & Associates, P. C.,* 354 F.Supp.2d 471, 476 (S.D.N.Y. 2005)). Without addressing the merits of Defendant's potential defenses, the Court concludes that Defendant has not articulated a defense unique to Plaintiff that precludes class certification.

In sum, the central issue in this case is whether the Defendant mailed a substantially similar collection letter which violated the FDCPA. Therefore, common issues exist sufficient to satisfy the commonality requirement. Further, all of the alleged class members' claims arise out of identical or substantially similar collection letters, resulting in the same violations of the FDCPA being implicated for each class member. Thus, the

class members' claims are typical of one another.

### c. Adequacy of Representation

■ To satisfy this factor, a plaintiff must demonstrate two elements: (1) "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class" and (2) "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378 (internal citations and quotations omitted); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.2009) (conceptualizing first prong as whether "plaintiff's interests are antagonistic to the interest of other members of the class").

Defendant does not assert a conflict of interest between Plaintiff Butto and other potential class members. Instead, Defendant argues that Butto has made no showing as to her "familiarity with the action, her participation in decision-making in the case, her ability or willingness to bear the costs of the action or her understanding of the comparative merits of class and individual actions." *See* Def.'s Opp. at 16.

Although some of the deposition testimony highlighted by the Defendant in its brief may raise some question, that testimony itself does not warrant denial of class certification. Sections of Butto's deposition testimony reflect which that she read and approved the Complaint (Butto Tr. 46:20–47:1); understood that individuals receiving a similar collection letter could be members of the proposed class and would get a percentage of the recovery (*id.* 49:24–50:04, 59:4–7); and that she would be liable for her fair share of class costs (*id.* 54:25–55:14). The proposed class representative in this case is not merely "a key to the courthouse door" for her attorneys; she is an unsophisticated consumer allegedly victimized by the Defendant. *See Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y.1978). Further, the Court does not identify any antagonism between Plaintiff's claims and those of the proposed Class A

which would interfere with Plaintiff's ability to act as class representative.

■ With respect to appointing class counsel, the Court considers the following factors:

(1) the work counsel has done in identifying or investigating potential claims in the action;

(2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

(3) counsel's knowledge of the applicable law; and

(4) the resources counsel will commit to representing the class.

*See* FED.R.CIV.P. 23(g)(A) (cited in *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y.2007)). The court may also consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R.CIV.P. 23(g)(B); *Iglesias–Mendoza*, 239 F.R.D. at 375 (citation omitted). No single factor is dispositive. *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y.2007) (citation omitted).

Plaintiff Butto is represented by Sergei Lemberg of Lemberg & Associates, L.L.C. Defendant claims that Butto's alleged unfamiliarity with the action, her "complete abdication of the case to counsel" and counsel's alleged failure to inform Butto about settlement proposals precludes class certification. Def.'s Opp. at 18. As indicated above, Butto's deposition testimony does not reflect that she is unfamiliar with this case or that she has abdicated all responsibility to counsel. Further, it is unclear from Butto's deposition testimony whether counsel failed to inform her of any settlement proposals. *See* Butto Tr. 50:16–25.[2]

Plaintiff's counsel has ample experience to serve as counsel to a class certified under the FDCPA. Sergei Lemberg graduated from the University of Pennsylvania Law School in 2001. Decl. of Sergei Lemberg in Supp. of

---

2. During Butto's deposition, she first denied having received a settlement offer from Defendant. Butto Tr. 50:16–18. Then, when asked if it would come as a surprise to her that Collecto had offered to pay her $1,001, Butto answered "no." *Id.* at 50:19–23. Then, when asked if she had heard of the settlement offer before, she answered "no." *Id.* at 50:24–25.

Class Cert. ("Lemberg Decl.") [DE 51–8] ¶ 3. He is a member of the bars of New York, Connecticut and Massachusetts and is admitted to practice in a multitude of federal courts, including this Court, the Southern District of New York and the Second Circuit Court of Appeals. Lemberg Decl. ¶ 3, 4. Lemberg & Associates has represented numerous plaintiffs in FDCPA actions. *See* Pl.'s Mem. at 10 (citing cases); Lemberg Decl. ¶ 10. The firm has prosecuted over four thousand consumer rights actions throughout the country, including consumer class actions. Lemberg Decl. ¶ 6. Their website reflects the fact that FDCPA cases comprise a regular part of the firm's law practice. *See* http://lemberglaw.com/. Lemberg & Associates have represented the Plaintiffs in this action for over two years, since the filing of the initial Complaint in June 2010. Attorney Lemberg attests that Lemberg & Associates is committed to the prosecution of this case on behalf of the proposed classes and the proposed class representative, and that the firm will continue to use its experiences and resources to that end. *Id.* ¶ 8. Thus, this Court finds that counsel will adequately represent the class. *See Assif,* 288 F.R.D. at 24–25; *Passafiume,* 274 F.R.D. at 429; *Ayzelman,* 238 F.R.D. at 363–364.

### B. Rule 23(b) Analysis

■ Under Rule 23(b)(3), before certifying a class, the Court must determine whether questions of law or fact predominate over the individual issues presented. FED. R.CIV.P. 23(b)(3); *Massey v. On–Site Manager, Inc.,* 285 F.R.D. 239, 244 (E.D.N.Y. 2012). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir.2001); *See also Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010) (finding predominance met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular is-

sues are more substantial than the issues subject only to individualized proof") (quoting *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002)). If predominance is found, a Court must also determine whether "a class action is superior to other available methods for ... adjudicating a controversy." FED.R.CIV.P. 223(b)(3); *Massey,* 285 F.R.D. at 244.

■ Defendant here argues that predominance is not satisfied, referring the Court to the same arguments it asserted on the issues of commonality and typicality. Def.'s Opp. at 19. These arguments consist of the potential differences in (i) the Verizon customer agreements and (ii) the collection letters sent by Defendant, and (iii) other "potential" individualized issues. Def.'s Opp. at 13. As noted, Plaintiff has provided copies of the Verizon Wireless customer agreements from 2006–2010 illustrating that these agreements have identical language pertaining to collection fees. *See* 2006–2010 Verizon Wireless Customer Agreements; Pl.'s Reply at 1. Plaintiff has also amended the definition of Class A to include as potential class members only those individuals who received collection letters "substantially similar" to the letter received by Plaintiff Butto. Thus, the Court finds that the issues regarding the substantially similar collection letters sent by Defendant predominate over any issues that are subject to individualized proof. Likewise, a class action here appears to be the superior method for the "fair and efficient adjudication" of a suit potentially involving over 18,-000 individuals with identical or nearly identical claims.

### IV. CONCLUSION

For all of the foregoing reasons, this Court respectfully recommends to Judge Spatt that Plaintiff's Motion for Class Certification be DENIED with respect to Class B, but GRANTED with respect to Class A, as reflected in the amended definition:

> ***Class A***
>
> **All consumers in the State of New York who were sent a collection letter by Defendant substantially similar to the Letter sent to Plaintiff for a Verizon Wire-**

less account within one year prior to the filing of this action, and which was not returned as undeliverable, which letter included a collection fee for Verizon Wireless service which had not yet been incurred at the time the letter was sent.

*See* Pl.'s Reply at 3–4 (emphasis in original). The Court further recommends that Plaintiff Victoria Butto be appointed as Class A representative and that Lemberg & Associates, LLC, be appointed as class counsel.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED.R.CIV.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.1997), *cert. denied,* 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: February 16, 2013