David ANNUNZIATO, Plaintiff,

v.

COLLECTO, INC. d/b/a EOS CCA, Defendant.

No. CV 12–3609 (ADS)(AKT).

United States District Court, E.D. New York.

Nov. 18, 2013.

Brian L. Bromberg, Bromberg Law Office, P.C., New York, NY, Joseph Mauro, The Law Office of Joseph Mauro, LLC, West Islip, NY, for Plaintiff.

Jonathan David Elliot, Dominic Spinelli, Zeldes, Needle & Cooper, Bridgeport, CT, for Defendant.

## MEMORANDUM AND ORDER

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

### I. PRELIMINARY STATEMENT

Plaintiff David Annunziato ("Plaintiff") brings this class action, on behalf of himself and all others similarly situated, against Defendant Collecto, Inc. doing business as EOS CC ("Defendant" or "Collecto"), pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. See generally* Am. Compl. [DE 37]. Plaintiff alleges that Defendant's "pattern and practice of gouging consumers through the insidious addition of 'collection fees and costs', and by threatening 'further steps' attempting to collect debt beyond the statute of limitations is illegal and contemptible conduct." *Id.* ¶ 2. On May 16, 2012, Collecto sent Plaintiff a debt collection letter which attempted to collect a debt allegedly owed by Plaintiff to New York Institute of Technology ("NYIT"). *Id.* ¶¶ 13, 15, 18. Plaintiff asserts that the debt was "well beyond any applicable statute of limitation." *Id.* ¶ 15. Plaintiff claims that the alleged debt is also outside the time period permitted to report the debt to any consumer reporting agencies. *Id.* ¶ 16. Moreover, Defendant demanded 42% fee/collection costs which were "unearned, unreasonable, unconscionable, and bore no relation—reasonable or otherwise—to any actual damages incurred by NYIT or Defendant." *Id.* ¶ 26.

In the instant September 20, 2013 letter motion, Plaintiff seeks to compel Defendant to produce the bookkeeping entries of 1288 consumers who received an allegedly illegal debt collection letter similar to the one received by Plaintiff. *See* Pl.'s Mot. to Compel ("Pl.'s Mot.") at 1 [DE 38]. Plaintiff asserts that the requested bookkeeping entries are relevant to the determination of the actual damages incurred by Plaintiff and other class members under the FDCPA. *Id.* at 8. In its opposition filed on October 2, 2013, Defendant argues that Plaintiff's motion is moot in light of disclosures Defendant has agreed to produce to Plaintiff since the filing of Plaintiff's motion to compel. *See* Def.'s Opposition to Pl.'s Mot. to Compel ("Def.'s Opp.") at 1 [DE 40]. On October 9, 2013, after seeking and obtaining leave of Court, Plaintiff filed a reply letter in which he explained that, contrary to Defendant's assertion, the parties have not reached an agreement on this discovery dispute. *See* Pl.'s Reply in Further Support of Pl.'s Mot. to Compel ("Pl.'s Reply") at 1 [DE 43]. Plaintiff claims that the items Defendant has agreed to produce are far more limited in scope than what Plaintiff believes he is entitled to in discovery. *Id.* Finally, on October 14, 2013, with permission of the Court, Defendant filed a sur-reply, arguing that its response to Plaintiff's document request was fully responsive and that Plaintiff's document requests are overbroad insofar as they pertain to non-class members (*i.e.* letter recipients who were debtors of non-NYIT educational institutions). *See* Def.'s Sur-reply in Opposition to Pl.'s Reply ("Def.'s Sur-reply") at 2 [DE 46].

### II. BACKGROUND

#### A. The Amended Complaint

On May 16, 2012, Defendant sent a letter to Plaintiff Annunziato on behalf of NYIT

seeking payment for a total debt of $4,609.29. *See* Am. Compl. ¶¶ 17, 18, 24; *see also* May 16, 2012 Collection Placement Reminder annexed to the Am. Compl. as Exhibit A. NYIT alleges that Plaintiff owed tuition monies. *Id.* ¶ 13. However, Plaintiff has not attended NYIT in over sixteen years. *Id.* ¶ 14. Moreover, Plaintiff argues that the alleged debt is well beyond the applicable statute of limitations period. *Id.* ¶ 15. Plaintiff also contends that the alleged debt is outside the limitations period in which the debt could be legally reported to any consumer reporting agencies, and, consequently, onto Plaintiff's credit reports. *Id.* ¶ 16.

In the May 16, 2012 letter to Plaintiff, Defendant sought $1,382.79 in fees and collection costs which amounted to nearly 42% of the principal debt and 30% of the total amount due. *See* Am. Compl. ¶ 24. Plaintiff submits that the fees and collection costs demanded by Defendant were "not incurred by NYIT nor by Defendant and were unearned, unreasonable, unconscionable, and bore no relation—reasonable or otherwise— to any actual damages incurred by NYIT or Defendant for any goods or services supplied by NYIT and/or Defendant for any work performed by or on behalf of NYIT and/or Defendant." *Id.* ¶ 25. Upon information and belief, Plaintiff claims that the 42% fee was imposed as an attempt by Defendant to collect unearned fees, which neither NYIT nor Defendant had incurred. *Id.* ¶ 26. Plaintiff alleges that the 42% fee was imposed to "try to intimidate the Plaintiff into paying the so-called 'Principal' out of fear that he would otherwise be liable for additional 'Fees/Coll Costs.' " *Id.*

Plaintiff brings the instant action on behalf of a class of persons whom Plaintiff believes were "sent form letters containing language substantially similar or materially identical" to the letter sent to Plaintiff. *Id.* ¶ 29. Plaintiff believes these letters were sent to "hundreds of consumers in New York." *Id.* Further, Plaintiff asserts that the following language found in the debt collection letter also violates the FDCPA:

> As a result of your continued failure to address the above referenced account, we have informed our client that you have not paid this debt nor made arrangements to pay. Please be advised that our client has the right to take further steps to collect this amount.

*Id.* ¶ 30; *see also* Am. Compl., Ex. A. Plaintiff claims that this statement is "false and deceptive, in that neither the Defendant nor NYIT has the right to take 'further steps' to collect the alleged debt." *Id.* ¶ 31. According to Plaintiff, there are "no 'further' steps that are legally permitted, in that the alleged debt is outside the applicable statute of limitations, and the alleged debt is outside of the period a debt can be reported onto the Plaintiff's credit reports." *Id.* Consequently, Plaintiff maintains this representation constitutes intimidation to pay a debt that is not legally enforceable and, further, that Defendant had no intention to take any "further steps" to collect the debt. *Id.*

**B. Motion for Class Certification**

Plaintiff filed a motion to certify the class under FED. R. CIV. P. 23 on February 14, 2013. *See* DE 13. On August 9, 2013, Judge Spatt issued a Memorandum of Decision and Order in which he, *inter alia,* granted Plaintiff's motion to certify the class. *See Annunziato v. Collecto, Inc.,* 293 F.R.D. 329, 337–38, 2013 WL 4045810, at *9 (E.D.N.Y.2013). Judge Spatt modified Plaintiff's proposed class definition and certified a class consisting of

> (a) all individuals who have mailing addresses within New York State; (b) who within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was time-barred by the applicable statute of limitations; (e) and containing a collection fee that they had not previously authorized by entering into an agreement with NYIT; (f) which was not returned by the postal service as undelivered.

*Id.* at 341–43.

Plaintiff filed a motion for reconsideration on August 15, 2013 seeking to amend the definition of the proposed class as set forth by the Court. DE 33. On October 15, 2013, Judge Spatt granted Plaintiff's motion for reconsideration and modified the class definition. *See Annunziato,* 293 F.R.D. at 341–43.

In granting the motion, Judge Spatt explained:

> Here, the Court agrees with the Plaintiff that there was an inadvertent error in the August 9, 2013 Order with respect to the written class definition. As the Court recognized in its previous decision, the Plaintiff brings two distinct claims concerning the form letter the Defendant sent the Plaintiff. First, the Plaintiff alleges that "the form letter ... includes [an] additional Fees/Coll Costs, which he believes was arbitrarily created by N.Y. Tech and the Defendant in order to collect unearned fees and to intimidate [him] into paying the "Principal" for fear that he would otherwise be liable for more Fees/Coll Costs." (8/9/13 Order, pgs. 2–3.) Second, the Plaintiff claims that the Defendant's statement in the form letter that it "ha[d] the right to take 'further steps' to collect the alleged debt" was "false and deceptive" in that "the alleged debt is outside the applicable statute of limitations, and the alleged debt is outside the period a debt can be reported on the Plaintiff's credit reports." (8/9/13 Order, pg. 3.) As such, the Court finds it necessary to modify the class definition so as to correct any unintended conflation of the Plaintiff's two claims in the class definition that was included in the August 9, 2013 Order.

*Id.* Accordingly, Judge Spatt modified the class definition as follows:

> (a) all individuals who have mailing addresses within New York State; (b) who within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was time-barred by the applicable statute of limitations; (e) or containing a collection fee that they had not previously authorized by entering into an agreement with NY Tech; (f) which was not returned by the postal service as undelivered.

*Id.*

### C. September 13, 2013 Telephone Status Conference

On September 13, 2013, the parties appeared for a telephone status conference to update the Court on the status of discovery and depositions. *See* DE 48. After hearing from both sides concerning their dispute over the production of bookkeeping entries, the Court directed the parties to brief the issue by way of letter motion. *Id.* ¶ 6. Given the extensive nature of the arguments presented by counsel, the Court granted the parties leave to exceed the three-page limit for letter motions. *Id.* All depositions were stayed pending the resolution of the motion to compel. *Id.*

### D. The Instant Motion to Compel

#### 1. *Plaintiff's Motion*

On September 20, 2013, Plaintiff filed the instant letter motion to compel. *See generally* Pl.'s Mot. Plaintiff seeks the production of " 'bookkeeping entries' relating to 1288 consumers who received an allegedly illegal debt collection form letter." *Id.* at 1. Plaintiff explains that he seeks the recovery of statutory damages on behalf of himself and all class members pursuant to 15 U.S.C. § 1692k. *Id.* at 2. Further, Plaintiff seeks the recovery of actual damages for all class members who paid the "improperly imposed 42% collection fee." *Id.* Plaintiff has requested the bookkeeping entries for each class member who paid such "illegal collection costs" and Defendant objects to such production. *Id.* Defendant has argued that since Plaintiff did not personally pay the illegal collection cost, Plaintiff is not entitled to represent a class of students who paid those costs. *Id.*

Plaintiff takes issue with Defendant's representations of what portion of the costs recovered by Defendant in its debt collection efforts constitutes the collection costs/fees. *See* Pl.'s Mot. at 2 n. 3. According to the Plaintiff, Defendant has represented that the sum total of the amount collected by Defendant for NYIT during the relevant time period was $198,921.91, of which $46,883.70 comprised the 42% collection fee. *Id.* Plaintiff argues that he "is not obligated to accept the Defendant's representation as to these figures and seeks the underlying account state-

ments for each of the class members so as to calculate the figures." *Id.* (citing *Wise v. Cavalry Portfolio,* No. 09 Civ. 86, 2012 WL 1597450 (D.Conn. May 7, 2012); *Miller v. Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP,* No. 10 Civ. 2156, 2011 WL 6105033 (E.D.N.Y. Dec. 7, 2011); *Mailloux v. Arrow Financial Services, LLC.,* No. 01 Civ.2000, 2002 WL 246771 (E.D.N.Y. Feb. 21, 2002)). The "underlying documents Defendant used to calculate these numbers" are needed in order "to determine the amount to which each specific class members (sic) is entitled." *Id.*

Plaintiff asserts that Judge Spatt has already certified the class and rejected Defendant's underlying argument opposing the production of the bookkeeping entries. *See* Pl.'s Mot. at 2. In his August 9, 2013 decision, Judge Spatt acknowledged that Defendant "suggests that because [there] might be a need for individualized determinations with respect to damages, the Plaintiff has not established typicality." *Id.* (quoting *Annunziato,* 293 F.R.D. at 337–38). However, Judge Spatt explained that courts have "routinely concluded that the need for individualized proof of damages alone will not defeat class certification." *Id.* (same) (internal citations and quotations omitted). "Moreover, the Second Circuit has recognized that there are a variety of ways for a district court to deal with individualized damages issues that may arise in the course of litigation." *Id.* (same) (internal citations and quotations omitted). Ultimately, Judge Spatt stated that "the violation alleged here—the core of the damages suffered—is the illegal debt collection attempt, whether or not the plaintiff paid and suffered actual damages does not affect his typicality as a class representative." *Id.* (same) (internal citations and quotations omitted).

Based upon Judge Spatt's August 9, 2013 decision, Plaintiff asserts that discovery of class members' actual damages are best determined through Defendant's bookkeeping entries "for each of the students who received [an] allegedly illegal letter during the relevant time period." *See* Pl.'s Mot. at 4. Since Defendant has already disclosed to Plaintiff the "total amount of money" collect-

ed in collection costs based on the letters, Plaintiff argues that Defendant must then have "access to the requested information." *Id.* Plaintiff asserts that the bookkeeping entry "for each student is likely a one page document that lists the money owed, the money paid, and the collection fee." *Id.* Plaintiff contends that the actual damages are easily determinable through these documents and asks the Court to compel Defendant to produce these entries. *Id.*

Plaintiff relies on Judge Spatt's citation to *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124 (2d Cir.2001) in furtherance of his argument that actual damages should be ascertained through the production of Defendant's bookkeeping entries. *See* Pl.'s Mot. at 4. According to Plaintiff, *In re Visa Check* held that disparity among damage amounts between class members does not preclude class certification. *Id.* at 4–6. Likewise, Plaintiff maintains, *In re Visa Check* also supports the notion that the "amount of allegedly illegal fees charged by a credit card company can be ascertained by looking at the records of the credit card company." *Id.*

Furthermore, as he did at the September 13, 2013 status conference, Plaintiff takes issue with Defendant's interpretation of *Butto v. Collecto, Inc.,* 290 F.R.D. 372, 390–391 (E.D.N.Y.2013), arguing that *Butto* does not preclude Plaintiff from representing a class which claims to have suffered actual damages even though Plaintiff, himself, may not have. *See* Pl.'s Mot. at 4 n. 4. Plaintiff explained that in *Butto,* the "plaintiff was proposing to represent *two* different classes: one class was defined as consisting of consumers who *had not* suffered actual damages; and the other class was defined as consisting of consumers who *had* suffered actual damages." *Id.* (emphasis in original). By contrast, Plaintiff's claim does not suffer from the same procedural deficiency insofar as there is only one class here and the members of that class are not defined by "who suffered what damages as in *Butto.*" *Id.*

Further, Plaintiff argues, the determination of actual damages in illegal fee class action cases brought pursuant to the FDCPA is "generally determined by the examination

of Defendant's records." Pl.'s Mot. at 6 (citing *Hamilton v. American Corrective Counseling Services, Inc.*, No. 05 Civ. 434, 2007 WL 541817, at *6 (N.D.Ind. Feb. 14, 2007); *Thomas v. Cont'l Serv. Group, Inc.*, No. 11 Civ. 5844, 2013 U.S. Dist. LEXIS 31967, at *2 (E.D.N.Y. Mar. 6, 2013); *Galvan v. NCO Financial Systems, Inc.*, No. 11 C 3918, 11 C 4651, 2012 WL 3987643, at *8 (N.D.Ill. Sept. 11, 2012)). In addition, Plaintiff maintains that in *Anokhin v. Cont'l Serv. Group, Inc.*, 10 Civ. 2890(ILG)(RLM) (E.D.N.Y.2010), another FDCPA class action, the plaintiff obtained bookkeeping records in discovery which allowed the parties to determine actual damages to resolve the case on a class-wide basis. *Id.* From a practical standpoint, Plaintiff contends, the bookkeeping records provide the "only reasonable way to ascertain/verify the actual damages for the class" and "[t]he records are obviously on a computer and can be produced by email instantaneously." *Id.*

Relying on the definition of relevant evidence set forth in FED. R. CIV. P. 26, Plaintiff asserts that he is entitled to discovery from the Defendant to demonstrate how much money Defendant procured from students by use of the allegedly illegal 42% collection fee. Pl.'s Mot. at 6. In light of the Rule 26 standard as well as Judge Spatt's rejection of Defendant's argument regarding Plaintiff's representative status, Plaintiff states that the "refusal to provide this evidence of damages is troubling." *Id.* Plaintiff claims that this information is "not only 'reasonably calculated to *lead to* admissible evidence,' but it is, in fact, clearly admissible evidence." *Id.* at 8.

Finally, Plaintiff states that none of the students authorized the 42% collection fee. Pl.'s Mot. at 8. Plaintiff annexed Defendant's collection agreement with NYIT which indicates that Defendant's fee to collect the tuition was a maximum 30% and that such fee was contingent on what the Defendant actually collected. *Id.* As such, Plaintiff seeks the bookkeeping entries to determine which students are entitled to receive damages for paying the allegedly illegal fee imposed in Defendant's letter and how much each should receive. *Id.*

## 2. *Defendant's Opposition*

On October 2, 2013, Defendant filed its letter in opposition to Plaintiff's motion to compel. *See generally* Def.'s Opp. As a preliminary matter, Defendant argues that Plaintiff's motion is not made in reference to any particular discovery request but, rather, constitutes a general demand for bookkeeping entries. *See* Def.'s Opp. at 1. Second, Defendant claims that Plaintiff is not entitled to discovery of the actual damages for all recipients of Defendant's debt-collection letters since Plaintiff, himself, suffered no actual damages. *Id.* Further, Defendant claims that Plaintiff's motion is moot in light of Defendant's agreement to disclose the following:

(1) Defendant agrees to produce a list of names and addresses of individuals with addresses in New York State who were mailed the letter in question and were alleged debtors of [NYIT] where the mailing was not returned. The relevant number of recipients is not 1288, but as disclosed in discovery, 1199, after allowances for return mail. We have discovered that these estimates included numerous recipients for other creditors. We are reviewing to determine the final number attributable only to tuition accounts from NYIT.

(2) For each of the recipients, [D]efendant will produce account information reflecting any payment received by [D]efendant from recipient after the sending of the letter and setting forth the amount [D]efendant was requested by the creditor to collect and which was requested from the recipient, the so-called "bookkeeping entries."

*Id.* at 2. Despite the agreement to disclose the foregoing information, Defendant maintains that Plaintiff, nonetheless, continues to demand the exact items as originally requested in his September 20, 2013 letter motion. *Id.* Defendant argues that the referenced disclosures would "adequately address the issue raised." *Id.* Counsel requests twenty days to serve these documents on Plaintiff's attorney. *Id.*

### 3. *Plaintiff's Reply*

By leave of Court, Plaintiff filed a reply on October 9, 2013 in further support of his letter motion to compel. *See* Pl.'s Reply. Contrary to Defendant's representations, Plaintiff points out, the parties have not reached an agreement on the pending discovery dispute. *Id.* at 1. In order to determine how much money each student who received the debt collection letter paid towards the 42% collection fee/cost, Plaintiff seeks documents which show: (1) the amount of money Defendant asked for in its letter to each student; (2) the amount each student paid after receiving the collection letter; and (3) the amount of money paid by each student which applied to Defendant's collection fee/costs. *Id.*

According to Plaintiff's counsel, in response to Interrogatory No. 2, Defendant stated that the debt collection letter was sent to approximately 1199 individuals with a mailing address in New York State in the one-year period immediately preceding the filing of this action, which letters were not returned as undeliverable. *See* Pl.'s Reply at 1; *see also* Def.'s Interrogatory Response No. 2 annexed as Exhibit "A" to Pl.'s Reply [DE 45–1]. Further, in response to Plaintiff's Interrogatory No. 15, Defendant stated that it collected $198,921.21 between July 19, 2011 and July 19, 2012 on behalf of NYIT from persons in New York to whom the letter was sent. *See* Pl.'s Reply at 1; *see also* Def.'s Interrogatory Response No. 2 annexed as Exhibit "B" to Pl.'s Reply [DE 45–2]. Also, in response to Plaintiff's Interrogatory No. 16, Defendant stated that it had collected $46,883.70 in fees/collection costs from persons in New York to whom were sent the collection letter during the same time period. *Id.* Based on these representations, Plaintiff maintains that Defendant "clearly has documents from which they are able to discern how much each of the 1199 students paid for collection fees." Pl.'s Reply at 1.

Plaintiff asserts that the documents Defendant has now agreed to disclose are still unresponsive to his requests. *See* Pl.'s Reply at 1. According to Plaintiff, Defendant is offering (1) account information reflecting payments received by Defendant from recipients after the letter was sent and (2) the amount Defendant was requested to collect on behalf of NYIT as reflected in the collection letters. *Id.* Two issues exist with this proposal as far as Plaintiff is concerned. *Id.* First, Plaintiff's counsel reiterates that he seeks discovery concerning the amount of money that was collected from the 1199 students which went towards the 42% collection fees/costs. *Id.* at 2. Defendant is only producing information "reflecting any payment received by defendant." *Id.* Plaintiff claims that Defendant is able to discern this information from its own records since it has already disclosed the total amount of money received by Defendant in collection fees/costs. *Id.* (citing Pl.'s Reply, Ex. B). Plaintiff seeks the information for each student which Defendant relied upon to calculate the total amount collected as well as the amount of money which went toward the collection fee/costs as referenced in Defendant's responses to Interrogatories 15 and 16. *Id.* (citing Pl.'s Reply, Ex. B). Plaintiff suspects that this document would be identical to the one-page "EOS CCA Selected" computer print-out of Plaintiff's account information which was produced by Defendant in discovery. *Id.* (citing Pl.'s Reply, Exhibit C). Although Plaintiff is not waiving his right to seek further discovery, Plaintiff states that Defendant's disclosure of this document from all letter recipients would satisfy his request. *Id.*

Second, notwithstanding Defendant's representation that some of the 1199 accounts identified in discovery are for non-NYIT creditors, Plaintiff maintains "that the documents for all 1199 of the referenced students should be disclosed." Pl.'s Reply at 2. Plaintiff's counsel argues that he "should be able to view these records to independently confirm why these students were originally included, and whether they should now be excluded." *Id.* According to Plaintiff, since there is a protective order in place in this action and Plaintiff has been certified to represent the class members, Plaintiff should be provided with all 1199 unredacted bookkeeping entries. *Id.*

#### 4. *Defendant's Sur-reply*

On October 14, 2013, by leave of Court, Defendant filed a sur-reply. *See* Def.'s Sur-reply. Initially, Defendant explains that, although not referenced in Plaintiff's motion, Plaintiff's request for bookkeeping entries is really a motion to compel a further response to Plaintiff's Request for Production No. 38, which seeks documents "relating to the amount of money allegedly owed to [NYIT] and/or the amount of money paid by every consumer too (sic) when [D]efendant sought to collect 'Fees/CollCosts' between July 19, 2011 and July 19, 2012." *Id.* at 1. Defendant maintains that its proposed response, namely, the amounts requested and paid by each NYIT debtor, would collectively satisfy this document request. *Id.* Defendant argues that its proposed response would "contain information identifying accounts on which there was no payment and setting forth the payment history on accounts where payments were received." *Id.* From Defendant's perspective, this proposal responds directly to Plaintiff's Request for Production No. 38 and nothing further is necessary.

According to the Defendant, the demands in Plaintiff's reply exceed the scope of Request for Production No. 38 insofar as Plaintiff seeks documents which show how much money received by Defendant was "applied" to collection costs on each account. *See* Def.'s Sur-reply at 1. Further, Defendant contends that it is "improper" for Plaintiff's counsel to "pontificate" about what may arise in Defendant's document production or whether the requested information would be reflected in a one-page document. *Id.* at 2. As Defendant notes, the one-page EOS CCA Selected computer print-out of Plaintiff's account produced by Defendant does not reflect information about the amount of money received by Defendant which was applied to fees/collection costs. *Id.* Accordingly, Defendant maintains, Plaintiff should not assume that similar print-outs for the remaining 1198 recipients of the letter would reflect such information. *Id.* In any event, the class is restricted to recipients of Defendant's debt collection letter who were allegedly indebted to NYIT. *Id.* Defendant, moreover, agreed to produce this class list during the September 13, 2013 telephone status conference. *See* DE 48 ¶ 2. Among the 1199 letter recipients, "perhaps less than one-half" are debtors of NYIT according to Defendant's counsel. Def.'s Sur-reply at 2. Therefore, counsel is currently reviewing the data to identify the exact number of the 1199 recipients who were NYIT debtors and will, consequently, be amending discovery responses affected by this new development. *Id.*

Defendant contends that Plaintiff's request for documents from debtors who are not indebted to NYIT is beyond the scope of the class definition adopted by Judge Spatt. *See* Def.'s Sur-reply at 2. Thus, according to Defendant, "it would be improper to share personally identifiable financial information regarding those individuals with [P]laintiff's counsel" since this "information has no bearing whatsoever on this litigation, class membership or any issues of liability or damages." *Id.* Defendant further states that Plaintiff's counsel has "no legitimate interest in identifying information about these non-class members or payment information regarding their accounts except to search for additional opportunities to litigate." *Id.*

Ultimately, Defendant is "willing to exhibit to [P]laintiff's counsel a list of the 1199 accounts identified by account number only and the client ID with the identity of the individual debtors redacted, or alternatively [D]efendant can exhibit such list *in camera* or under seal to the Court." Pl.'s Sur-reply at 2.

### III. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b). " 'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.' " *Oppenheimer Fund, Inc.*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir.1992) (noting that the scope of discovery under Rule 26(b) is

**120**

"very broad"); *Greene v. City of New York,* No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York,* 269 F.R.D. 267, 282 (S.D.N.Y.2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case)); *Barrett v. City of New York,* 237 F.R.D. 39, 40 (E.D.N.Y.2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

■ Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. Marine-Max, Inc.,* No. 12–CV–368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 3:05CV1924, 2009 WL 585430, at *5 (D.Conn. Mar. 4, 2009); *Evans v. Calise,* No. 92 Civ 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir.2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir.2008)); *Barbara,* 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes.").

## IV. DISCUSSION

As a preliminary matter, the Court finds that the Plaintiff's status as a class representative is not at issue. Judge Spatt already held in his August 9, 2013 Memorandum and Order that Plaintiff is entitled to represent class members who suffered actual damages, statutory damages, or both, notwithstanding the fact that Plaintiff did not personally suffer actual damages. *See* Def.'s Opp. at 2; *see also Annunziato,* 293 F.R.D. at 337–38. Nevertheless, in opposing this motion, Defendant continues to assert that Plaintiff is not entitled to the documents sought because Plaintiff did not personally suffer any actual damages. Def.'s Opp. at 2. In light of Judge Spatt's Order granting Plaintiff's motion for class certification, Defendant's argument that

Plaintiff is not entitled to discovery for the actual damages of class members since Plaintiff, himself, suffered no actual damages is unfounded. The Court notes that Defendant may later seek to decertify the class at the conclusion of discovery. However, at this stage of the litigation, Plaintiff's motion to compel is governed by the liberal standard for relevance under Rule 26 which necessitates production whenever such discovery has any bearing on the claims or defenses at issue. *See Barrett,* 237 F.R.D. at 40.

■ However, notwithstanding the liberal standard for relevance under Rule 26, the Court finds that Plaintiff's request for account information for recipients of letters pertaining to non-NYIT debtors expands the class definition adopted by Judge Spatt. *See Annunziato,* 293 F.R.D. at 341–43. In his August 9, 2013 Order, Judge Spatt defined the class as individuals who, among other things, received a letter from Defendant concerning a debt with NYIT, not with any other educational institution. *Id.* Moreover, Plaintiff provides no authority to support his claim that he is entitled to review account information of all 1199 letter recipients to personally investigate the validity of Defendant's representation that less than one-half of the 1199 are debtors to NYIT. Defendant's counsel is an officer of the Court who has an obligation to directly oversee and supervise his client's accurate identification of the 1199 letter recipients to determine which letters deal with NYIT and then to produce those letters to Plaintiff's counsel. In addition, Plaintiff's counsel is free to explore this issue at depositions. If Plaintiff's counsel has a good faith basis to renew his motion after doing so, he is free to make a proper motion.

The Court is not persuaded by the case law cited by Plaintiff in support of his request for the records of all 1199 recipients of Defendant's debt-collection letter, irrespective of whether the creditor involved is NYIT. In *Miller,* an FDCPA action referenced here previously, the court granted in part and denied in part plaintiff's motion to compel documents from defendant concerning its net worth. *See Miller,* 2011 WL 6105033. Specifically, the court in *Miller* denied plaintiff's request for additional infor-

mation concerning deductions listed on defendant law firm's tax returns. *Id.* at *1. However, relying on *Krapf v. Prof'l Collection Servs.,* 525 F.Supp.2d 324, 327 (E.D.N.Y. 2007), the court in *Miller* compelled the production of the individual defendant law partner's net worth since he was alleged to be the signatory on the collection letter which formed the basis of Plaintiff's FDCPA claim. *Id.* at *2. Here, by contrast, Plaintiff does not seek discovery concerning Defendant's net worth but, rather, seeks documents which reflect the payment of debts by all 1199 recipients of Defendant's debt collection letter, regardless of whether the debt concerns NYIT.

Plaintiff also relies on *Mailloux* to support his demand for account information for all 1199 recipients. *See* Pl.'s Mot. at 2 n. 3. Plaintiff in *Miller* also cited to *Mailloux* arguing that he was entitled to discovery regarding the defendant's net worth since it was "critical to a determination of potential damages." *Miller,* 2011 WL 6105033, at *2 (citing *Mailloux,* 2002 WL 246771, at *1). In *Mailloux,* the issue which arose again involved the net worth of defendant in order to determine class damages under 15 U.S.C. § 1692k(1)(2)(B). *Mailloux,* 2002 WL 246771, at *1. The court in *Mailloux* found that the documents concerning defendant's net worth were "unquestionably relevant and discoverable" and that "plaintiff need not accept defendant's interpretation of its financial data through representations in an affidavit, but is entitled herself to examine the data underlying defendant's statement of net worth." *Id. Mailloux* does not support Plaintiff's position for two reasons. First, as noted above, Plaintiff is not seeking these documents to ascertain Defendant's net worth—a statutory prerequisite—but rather, to calculate damages. Second, compelling production of these non-NYIT accounts would exceed the scope of the class defined by Judge Spatt. Thus, Plaintiff's request for non-NYIT account information is irrelevant to the claims set forth in Plaintiff's Complaint and the Court will not require their production.

In any event, it appears that Defendant has agreed to produce information which will address Plaintiff's concerns regarding the identification of all 1199 letter recipients. As explained in its sur-reply, Defendant is "willing to exhibit to [P]laintiff's counsel a list of the 1199 accounts identified by account number only and the client ID with the identity of the individual debtors redacted, or alternatively [D]efendant can exhibit such list *in camera* or under seal to the Court." Def.'s Sur-reply at 2. The Court finds this offer to be sufficient at this point in time and directs the parties to work out the details. Likewise, as pointed out above, Plaintiff is permitted to renew his application at a later time in the event that he provides a good faith basis for the production supported by legal authority for the relief sought.

Defendant has agreed to "produce a list of names and addresses of individuals with addresses in New York State who were mailed the letter in question and were alleged debtors of [NYIT] where the mailing was not returned." Def.'s Opp. at 2. Second, Defendant has agreed to produce "account information reflecting any payment received by [D]efendant from recipient after the sending of the letter and setting forth the amount [D]efendant was requested by the creditor to collect and which was requested from the recipient, the so-called "bookkeeping entries." *Id.* The foregoing production will partially satisfy Plaintiff's request as identified in his original motion. *See* Pl.'s Mot. at 8 ("Plaintiff seeks the bookkeeping entries to determine which students are entitled to receive money back for paying the illegal fee imposed by Defendant, and how much.").

■ The Court acknowledges, as raised by Defendant, that in reply, Plaintiff added a further request to his motion, namely, for discovery concerning the amount of money that was collected from the 1199 students which went towards the 42% collection fees/costs. Pl.'s Reply at 2. Defendant argues that the demands in Plaintiff's reply exceed the scope of Request for Production No. 38 insofar as Plaintiff seeks documents which show how much money received by Defendant was "applied" to collection costs on each account. *See* Def.'s Sur-reply at 1. Regardless of Plaintiff's failure to raise this issue in his original moving papers, the Court finds that information concerning the amount applied by Defendant to collection fees and

costs is germane to Plaintiff's claims under the FDCPA. As Plaintiff notes, the "Defendant's collection agreement with [NYIT] indicates that Defendant's fee to collect the tuition was a maximum of 30% collected, and was contingent on what was collected." Pl.'s Mot. at 8. Plaintiff alleges that the letters sent by Defendant imposed a collection fee exceeding 42% of the principal amount. *Id.* Moreover, Defendant's responses to Plaintiff's interrogatories demonstrate that Defendant possesses information concerning the allocation of the amount of debt collected as against the amount applied to collection costs/fees. Thus, the Court finds that the amount of money collected by Defendant which was actually applied to the collection fees/costs imposed by Defendant is reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, Plaintiff's motion is GRANTED in part and DENIED in part.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion to compel. Defendant is directed to serve Plaintiff's counsel with the following discovery within 30 days:

- a list of names and addresses of all class members;
- the amount of principal debt demanded from each class member in Defendant's collection letter;
- the amount of collection fees/costs demanded from each class member in Defendant's collection letter;
- the amount of money Defendant received from each class member in response to its collection letter;
- the amount of money Defendant received from each class member in response to its collection letter which Defendant applied to its collection fees/costs; and
- EOS CCA Computer Print–Outs (identical to Exhibit C in Pl.'s Reply [DE 45–3] ) for all class members.

**SO ORDERED.**